The next case for oral argument is United States v. Chibeast v. White. Before hearing oral argument from the first appellant, the Court has been notified that because of the weather conditions in San Francisco today, Ms. Hamilton is unable to get to the courthouse for oral argument. We have tried to reach her and have failed to do so. So what we will offer her is the opportunity to listen to the recordings of this argument, and within a set period, let's say five days, she may file whatever comment she wishes based on the oral argument that she will have missed. So with that introduction, and I take it that's still the state of affairs, very well. We will hear oral argument from Mr. Victor. Victor, and I am here to represent Mr. Chibeast, who is the appellant in this matter. First off, I want to make the point that I think everybody agrees that waiving your right to counsel in a criminal case is a horrible idea. I think it's an especially bad idea if the person is in custody. So there is absolutely no dispute about that point. I'm not here to argue any extra rights or privileges for Mr. Chibeast. I think that sort of life is hard when you are an in-custody pro per defendant, and I think that those are the facts of life and those are the kinds of things that make it a bad choice to waive counsel. However, a balancing of interests is at hand here, as it is in so many other areas of our law. I understand that the correctional facility, they have important interests. They have a job to do. I get that. On the other hand, the in-custody pro per has a right to defend himself, and so this Court needs to balance interests and do it in a way, of course, that is fair and reasonable to both sides. Now, as I understand it, your fundamental argument is that he was deprived of access to discovery materials. Well, I think there are three things here. I think there are actually a couple of ways that we could have brought this case. One is to say there are three separate things. There's the discovery, there's the sleep issue, there's the food issue. And I do take the position that any one of those deprived Mr. Chibeast of his right to a fair trial, but that is not the case I'm making here today. The case I'm making here today is the cumulative effects of all three of those put together. Separate the discovery from it for a second, because Judge Bolton never addressed that issue, and I think understandably, given the pro per nature of the case. If we were just to focus on the discovery aspect of this case, what do we do with it? We don't have we don't know. All we have is Mr. Chibeast saying, I didn't get to see these three boxes. I take it that's probably true, but we don't even know that's true. We don't know what's in the boxes. The district court has never addressed the issue. They may be important papers. They may be completely irrelevant. But I take it you now know what's in the boxes. Well, I wish I could answer yes to that question. I really can't. What happened in this case is my office went down to the marshal's office, and we picked up nine boxes of what I would call a big mess. And we attempted to try to figure out with Mr. Chibeast exactly what he got and what he didn't get. I think there is a huge chain of custody problem here, because the boxes went from CCA, which is an hour and a half, up to the marshal's office in Phoenix. But don't you have the burden of proving to us that there's something in there that would have made a difference? Well, actually, addressing the first question first, the issue of do we really know that he didn't get these three boxes, and I agree that's a legitimate concern. So I went back through the record very carefully, and I think that we do know with certainty that there was indeed three boxes that were missing. The way I get to that is by saying if we go to the excerpts of the record on 58, the government agrees that there were sort of two waves of discovery that were made in this case. First, there were the six banker boxes that were delivered on 2713, and then there was the, quote, additional discovery that was delivered on 215. And so I received nine boxes. So I know that there were definitely nine boxes. However, if we look at the excerpts of the record 252, then what we can see is on 4313, the CCA itself, the jail itself, they confirm that my client only saw six boxes. If we contrast that with excerpts of the record 254, what we can see also from CCA is that on 620.13, after many requests, hey, can you please answer my question? Why didn't I get to see these other three boxes? CCA then confirms it's true. We got nine boxes. So we know that there were three boxes. I would love to be able to say to you, look, here's what's in the three missing boxes, and for sure I can tell you it would have made a difference. On the other hand, I can't. But isn't that your burden? You've alleged, and we certainly understand, the boxes didn't arrive on time, but that's neither here nor there if it wouldn't have been – if there's nothing in the boxes that would have made any difference or could have been used in the trial. I've got to admit, when I first got this case, I was concerned about that very issue. However, I don't think it's my burden. And the reason I don't is the following. The government has the burden to show that this was harmless error beyond a reasonable doubt. Well, that's only if it's constitutional error. Well, it may just be a – I mean, what we have here is the prosecutor did what they were supposed to do, the government. They delivered the boxes. The prison apparently, and I'm still not sure the record – I'll look at the things you said – the prison apparently didn't deliver the second set of boxes to your client. If your client had not been self-represented and when he discovered this, there would have been a motion for new trial or a motion to set aside the verdict, and the judge would have had a hearing, and we would have had a record. But that didn't occur. He filed these notices with the court that said notice of not receipt of stuff. And the district judge, for what I think are probably understandable reasons, just never addressed them because she didn't understand them to be motions for new trial. So what do we do now? I mean, that's the problem. You're saying to us we ought to reverse the conviction, but for all we know, the boxes that weren't delivered don't contain important material. Don't you have to show some prejudice? Judge, it pains me to stand here and disagree with you on this point. Well, no, it shouldn't pain you. Well, it doesn't pain me that much, but that's my job. But here's what bothers me about – So we get paid for it. I understand. Here's what bothers me about this. I got an in-custody pro per defendant who finds out about this issue after the trial. From what I can see in the record, he did everything possible to raise it. Did he file the appropriate motion? Not exactly. But the judge, Judge Bolton here, did have the responsibility to ensure that there was a fair trial, which seems reasonable to me. But during the trial, she had no notice that there was a problem. Absolutely. So let me ask you a procedural question. I'd like to try to solve your problem. Is it possible that we could treat your client's last motion, which occurred after the notice of appeal, as a motion for a new trial, that we could ask Judge Bolton to go back now? I don't know how we do it. I'm trying to figure out procedurally how we do it. And ask Judge Bolton to take a look at this issue? Well, this is what I was going to say. Because I don't – I must tell you, I don't find your other arguments about why the trial was unfair convincing, but this is a disturbing thing. So I'm trying to figure out how we, without starting all over again, deal with this issue. Well, as an initial matter, I think it's important to note that the government doesn't disclose things that are irrelevant. They're only – their responsibility is to disclose things to the defendant that are relevant documents. So as an initial matter, I would say the government thought that this was relevant evidence. And we're talking about, you know, not just a couple of pages of discovery that we're missing. We're talking about one-third of the total amount of discovery in this case. It would be difficult for me to understand, as a criminal defense attorney who's been doing this for 20 years, that a third of the discovery in the case would certainly be irrelevant to the matter. But what bothers me about this – and I fault Judge Bolton not at all for during the trial. She had no knowledge of this. But shortly after the trial, my client finds – But what should she – what should Judge Bolton have done shortly after the trial? Judge – Judge Bolton – Assuming that she was told about this, wouldn't she have had to have a hearing? I think that's exactly what she – And at the hearing, people would have explored what happened and what your client didn't get to see. I think that was the mistake here, Judge. Okay. So how can we recreate that post-verdict situation procedurally? Is there some way we can do that? Well, I've given a lot of thought to asking you to remand it just for that exact hearing. But I've got to say, it's difficult because now I've got the nine boxes in my storage. The government will raise, you know, chain of custody issues. And if you look at the information – and I'm going to ask you to take a peek at excerpts of the record 258 – it seems to me that CCA themselves, the jail here, they were confused about exactly what they had and what was put in each box and what was disclosed. They didn't understand exactly what they had. When you have an in-custody pro per defendant, there have to be some accommodations. I'm not – How much time has elapsed now since the time when the boxes actually got there, as to which there's no dispute, and now? How long ago is this? About a year or two years? How long? I don't think it's been quite that long. I want to – I'm sort of guessing here because I don't have the exact – maybe about a year since I've had the case. Since I picked up the boxes, my firm did, the nine boxes from the Marshalls. We went through it. We tried to decipher with Mr. Chibis. But you didn't find anything in there that might have helped in the trial? Well, the initial problem was, Mr. Chibis, what did you have and what did you not have? We were not able to determine that from talking to Mr. Chibis. Counsel, we have a timing issue. We forgot to reset the clock. The concept was 20 minutes for both cases, and 10 minutes, obviously, for each. So I'll give you another minute or so, but you don't have the full 20 minutes, and I regret – I thought I had the full 20 minutes, but it is what it is. As to the other two issues, I think they are important issues. I mean, the food issue, Judge Bolton said, look, I don't have to give you a hotel room or a cot. I get that. I'm not asking for that. But is it too much to say the guy should get some food? He was allergic to peanut butter. He raised it at the outset of this. Is it too much? Is it too much of a burden on the correctional facility to say, hey, look, give him a ham sandwich or a bologna sandwich, something he can eat so he can represent himself? Is it too much to say – and I wish this Court would take this opportunity to fashion some rules to give guidance to the lower courts, to say minimum hours of sleep. I look at 24 hours in the day, and I got eight hours of trial, six hours of sleep. That still leaves a lot of time for transport. It doesn't seem to me too much of a burden to put on the correctional facility. And it does seem like it violates our fundamental fairness notions of a fair trial, of due process, to keep this guy awake on maybe two or three or four hours sleep and say, do your best without sleep, without food, without a third of the discovery in this case. Here you go. Here's your fair trial. Is there anything in the record that suggests that he was treated differently from the rest of the defendants in custody? I don't have anything to say that, but I would just say back to you, Judge, that just because they treat everybody the same way, if they don't meet the minimum standards of due process, it isn't enough. And I'll leave you with this just final thought, if I could. Yesterday, I was very disturbed, as someone who served our country in the Marine Corps, to see this document on torture that was released regarding the CIA. And I noted, as I was sitting there waiting for my delayed flight, listening to the British Prime Minister, David Cameron, he made that quote, we won't succeed if we lose our moral authority. And I thought about that statement, and I thought how this applies to my case. I feel the same way. I believe in our justice system. There got to be some minimum standards. I'm here to ask you to set some for the lower courts. Thank you. Counsel, I will allow you one-minute rebuttal, if you wish to use it. Thank you. I appreciate that. Will you hear from the government now? May it please the Court, Rachel Hernandez for the United States. And if I could clarify, should I address issues relating to the other defendant, which those issues are totally separate?  Okay. Thank you. Rachel only represented one of the clients, so you have the whole 20 minutes. If you insist upon using all 20 minutes, you may do so. And you may say whatever you'd like with respect to the White case. But obviously, the initial focus will be on this case. And Mr. Hernandez, just so that you don't use up some of your time on something that may not be up to date, I'm very interested in what we do with this additional discovery. Thank you. Tell us how we solve this problem. I will start with that. So the Court has correctly identified that here, and it's been a year and a half since Mr. Chybiste, Chybiste, I'm not sure how it's pronounced, says he got the boxes. So he said he got the boxes on June 12, 2013. In fact, he had noticed that there were additional three boxes as of 2-2113 in the government's motion. Your motion says that, but for some reason or another, and the record isn't established on this, but he contends they never got to him. Right. But he did not raise to the district court at any time until almost sentencing that he never got those three boxes. And the government's point is he knew about the three boxes when the government filed its response to his motion to suppress. And that document was filed on February 21, 2013. In that document, we stated six boxes were disclosed to the defendant on February 7, and three additional boxes were disclosed on February 15. So as of that motion, pre-trial, he knew that there were nine boxes. That was the time for him to say, hey, I never got the other three boxes. And he didn't. He filed, he did file motions, notices around the time of the sentencing. And I'll note that Judge Bolton did address his notice for a new trial, construed it in motion for a new trial, and found it untimely and not well taken. That's the fourth one. There are four separate notices. Three are before judgment. One is after the appeal. And she says, I can't deal with the one you filed after the appeal because it's – I don't have jurisdiction anymore. There is one on – at sentencing that she declares, that she construes as a motion for a new trial and finds it untimely and not well taken, and that's at SCR 100. At the sentencing, she states that. So is it your position that she turned down this argument on its merits or because it was made untimely? I think both. The record reflects that she said untimely and not well taken. So as to the Court's question about whether this should be remanded for some sort of hearing, the defendant hasn't raised, and still today in his argument, says he's not raising that this was an abuse of discretion by the Court in denying the motion for a new trial, which is what this Court would have to find to send it back for some sort of review of the motion for a new trial. He's saying that his trial was unfair, and yet he has not met his burden. Because he does carry the burden to show that when the government acted in good faith, that there was some prejudice. But let's – let's expand the government beyond the prosecution. You all did your job. You delivered the stuff. You filed the notices. The Federal authorities in Florence apparently – we don't know – but apparently never made these other three boxes available to Mr. Chybiste. And so we have the government keeping him from access to discovery. And maybe he could have gone to the judge and complained, and maybe he could have gone to the prison authorities and complained, but he didn't. But it's really the government that didn't give him the boxes, at least according to his contention. What do we do with that? Well, because the government attempted to, and you're right, we're all – we're all the government. Nobody's claiming bad faith or failure to do what you're supposed to do. And because it is good faith, the Cardenas-Mendoza case says that the defendant needs to have – has the burden to show prejudice, and the prejudice necessary to justify a reversal is, quote, the likelihood that the verdict would have been different had the government complied with the discovery rules. And as we stand here today, they still have not shown prejudice. I understand counsel says he was unable to recreate what the three boxes were. As far as I know, there was no contact to my office to say, hey, what were the bait stamp numbers of those last three boxes. I was going to ask that. Do you have discovery logs that might indicate what was in those boxes? Well, I'm not trial counsel, but that is our general procedure. I cannot imagine that three additional boxes were sent, and it was not tracked what was – what was in those three boxes. So certainly, that's something that could have been recreated to provide that information. And we just stand here, you know, with no record on prejudice, and that is clearly the defendant's burden. Can I ask you, to that point, because that's a trouble – something that troubled me as we were coming into argument, we're on appeal. This is appellate counsel. So there's no record that's been developed in the district court. Do we have case authority that says appellate counsel outside the established record can proffer to the – our panel the kind of evidence to show A, receipt, B, chain of custody, C, whether it was material, D, that it was prejudicial? In other words, on oral argument or in the briefs, present what would normally be presented to a district court? Because I litigated cases for years where we would get document dumps, and, you know, one-third of the documents could contain, you know, the smoking gun, whatever. So you have to go through. Coming in as counsel, counsel would have to know context, go through the nine boxes to see how all of these fit together. Now, you know, they're representing him, so they have an obligation to us and to the court and to the client to be able to articulate a good-faith argument as to why it's material and why it's prejudicial. So they would be putting in a tremendous amount of, arguably, tremendous amount of effort to recreate the scenario had these all been available to Harrington – excuse me, to Beast before it was presented to the jury. So now we're on appeal, and we're all, for obvious reasons, saying, well, is it meaningful? And I'm trying to figure out, well, what's the burden? In other words, there's no record. What is the burden that to Beast counsel is – appellate counsel is supposed to present, which is not part of an established record? That is the kind of record that would normally go in fact-finding that would go to a district court. That's my problem. So have we addressed this issue before? Your Honor, I don't know the answer to that question, and I can certainly supplement the argument with the answer to that. But what I would say is the defendant below, at district court, did not point out anything that was prejudicial to him. As Judge Hurwitz has noted, the defendant filed, I think, four motions relating to discovery that – discovery that I didn't get. In none of those does he point to anything prejudicial in those boxes as he's filing those motions. So there – Was there any indication that at that point he'd actually seen those boxes? That he was seeing them? Yes. So he says he got the boxes on June 12, 2013. That's what he told the Court in his motions. And the trial ended when? The trial – well, sentencing was July 8th. Right. And the trial ended – the trial was in March. It was after the trial. Right. The trial. It was after trial. But he had – so as I was saying, he had the opportunity at the trial level to make that record. He did not make a record that there was any prejudice. In pre-sentencing? Yes. Pre-sentencing, but before the district court, so that he could have made a record showing that what was in those boxes was prejudicial to him or anything or one sheet of paper was presidential. Did he actually have the time and ability to go through that many documents and gin up a pro se materiality argument? Is that what you're saying? Well, he says he got the boxes a month before sentencing. So I don't know. I don't know, Your Honor, about whether his access, you know, what the hours were that they allowed the boxes. I'm sorry. I don't know that. That's the fact we don't know. And I can tell you, having been victimized by late, you know, document dumps, I'm sure you have, you don't just sit down with that many documents and dash it off in a law office. You know, he's in a prison. He's got restrictions. We don't know. That's my problem. Let me ask you – I'm still worried about how we deal with this. So what would be wrong from the government's perspective if we were to go ahead and adjudicate the appeal and then say to Judge Bolton, you ought to treat this as some sort of post-judgment motion to vacate the conviction and make some findings on it? Well – And we'll have a record, and she'll either say, yes, I'm going to grant a new trial because this was terrible, or no, it wasn't and I'm not going to. And we'll be able to review that, too. I guess I would say to that that's not the relief they're requesting. They had their opportunity to make a valid motion for new trial below. The Court determined that it was not well taken. So then I guess that would be tantamount to this Court finding that Judge Bolton abused her discretion in denying that. And that it was untimely as well. And so that hasn't been addressed here on these briefs. Was the first filing untimely? In other words, if we construed the first filing as some sort of motion that said, oh, my gosh, I discovered after trial there were a bunch of documents and I want a new trial, judgment hadn't been entered yet, wouldn't that have been a timely motion for new trial? Well, that pleading was entitled, notice of new boxes of discovery unknown to me. Yeah, I understand. And I know it's not entitled motion for new trial. But if we treated it as such, would it have been timely? Yes. That was filed two weeks before sentencing. And I'm sympathetic to a district judge who can't, who doesn't read that as a motion for new trial because it doesn't say so. But if we treated it as one and told the district judge, go back and go back and treat it as one and have a hearing, we'd then know what was going on, wouldn't we? That certainly would give the district court an ability to create a record that would answer some of the questions the court has here today. Could I ask on a different question? I know you're running over time, but it's important. Council has raised this food and transportation issue. And I was quite astonished that there's so much transit time, just at least as articulate. Could you give your perspective on what goes on with these prisoners? I mean, the fact that if he's allergic to peanut butter and can't get an alternative source of food and that whether it's, as Council said, I mean, if this is the normal process, I don't think we should just back away from it and say, oh, well, that's great. Could you give us a little perspective on the real world of how much sleep is available to these prisoners and why there couldn't have been a food accommodation? Yes. And to that I would say a couple of things. The defendant did receive a fair trial. The district court correctly balanced the defendant's concerns with those of the jail facility. First of all, the district court gave the defendant an option to move to a jail facility three blocks from the courthouse. He rejected that and instead decided to stay where he was at, which is an hour away. And the record's unclear whether he was at CCA or FCC, but they were both approximately an hour from Phoenix. I would note that at ER 234 and 235, the district court said that it had spoken to the marshal's office and found the defendant's claims about his travel times to be exaggerated, saying that, you know, yes, if a bus breaks down or there's some issue like that, but that hasn't occurred during the trial. And so I believe that you're exaggerating its severity at ER 234, 235. So I think that it wasn't as bad as the defendant said. What about the food? The food issue was brought up once by defendant and never brought up again. And so the record is unclear about what he received from lunch beyond that first day. She, excuse me, Judge Bolton, directed him to address it to the marshals to ensure that he got some food. And we can only assume, since it was never brought up again and he had no problem bringing up the transportation issues numerous times, that the issue was resolved. Counsel, you're four and a half minutes into the White case. Do you want to say anything with respect to that? I would just say that that's a case of overwhelming evidence. The defendant in that case was a UPS driver who was working as a courier for the Ortiz Drug Trafficking Organization. He accepted boxes of drugs for delivery and returned money boxes to the organization, sometimes just tossing those in the back of a co-conspirator's car. When he transported the drugs, he was paid $50 a pound to take the drug boxes into UPS system. And during one six-month period alone, he handled 200 to 300 pounds of drugs a week. He stockpiled the cash he received and made cash deposits and paid off things with cash. So after reviewing the evidence in the light most favorable to the prosecution, it is apparent that there was sufficient evidence for a rational jury to find the defendant guilty beyond a reasonable doubt. And at a minimum in this case where there was a failure to object, no directed verdict motion, certainly there was no plain error. Let's assume we agree with the insufficiency of the evidence. Could you address the, I guess it's a 404B argument, the argument that in effect the proof of the separate crime that the defendant committed shouldn't have been included in this case? Yes. The Chia case sets forth the test to evaluate admissibility of 404B evidence. First, does it prove a material point? And just briefly to talk about what was happening with that 404B evidence, the defendant was working at a UPS hub where he profiled drug packages. He said, let me see, let me look at these boxes as they're coming through the hub. If they look like drug boxes to me, I'm going to slap a label on it to one of three addresses that he controls, his nephew, his, I think, daughter, and I'm going to have it sent there. So as to materiality, it shows his knowledge. He knows enough about drug boxes that he's able to just profile them in the vast, numerous boxes coming through UPS. He can spot what he thinks is likely a drug box. But isn't the original scheme quite different? The original scheme is not him identifying drug boxes. It's just him carrying boxes that somebody else gives to him, right? Sure. Boxes that contain drugs, which would be an indication that he knows what drug boxes look like. But additionally, I would point to this as being relevant to a common planner scheme and say that it's not that different, because here he is using his UPS position to traffic drugs. He did it here and here. And so it shows that it's a common plan and scheme. It shows his knowledge of how drugs are moved through the UPS system. So the second point is that it's not remote in time. There was at most eight months between when the Ortiz scheme ended and when law enforcement became aware of the over-labeling scheme that was presented as 404B. The third test, the third prong is whether there was sufficient evidence the defendant committed the other act. He was working at the hub. The boxes were coming through the hub, and they were being sent to addresses he controlled. And in fact, address labels were found in his truck relating to those boxes or sequential number to those boxes. To the over-labeling.  Okay. He did that openly at the hub? That is, you said he announced that he was going to, that was his function to screen the boxes for? No. His job was to do. But you said he did all this, and I got the impression that he self-appointed himself or whatever, did it openly at the UPS hub. I think, I don't know what efforts he took to conceal it, but his job at the hub was to sort the boxes and move them along to where they should be. However, when he saw one that he thought was a drug box, he put his own label on it and sent it along to where it should be, which is now his addresses. And if it's a drug box, there's nobody to complain that, hey, my box never got where it was supposed to be. Nobody's going to call law enforcement and say, or UPS and say. That's the impression I was getting, because we do, we know the Postal Office screens packages. It's not as if UPS designated him as someone. No, Your Honor, that's correct. I'm sorry if I gave that impression. UPS does not screen for drugs, and hence, it is often used for drugs. Thank you. Thank you, counsel. Mr. Victor, you have a minute reserved time. All I need is another 45 minutes just to finish up. The first thing I want to point out is the government makes very much of this issue about, well, he was offered the Maricopa County Jail, and they raise that three times in their brief. I would urge you to take a look at that. That is not the case. It's not true. He was not offered the Maricopa County Jail. If you take a look at the reporter's transcript on 32013, pages 424 to 426, it's ER 213 to 215. If you just read that, you will see he was never offered that opportunity. He was discouraged from that in saying, it's not going to make any difference. Everybody agrees. Second, if you just look at this sleep issue, I think what you'll find is his complaints made sense. I've detailed this out, but if you take a look in my brief on page 10, my reply brief, but if you look at the excerpts of the record 234 to 236, you will see that his complaints actually made sense. What Judge Bolton was wrong about is the fact that she was just simply taking the time it took to leave from the court at 5 o'clock and get an hour and a half later to the CCA facility in Phoenix, and she didn't account for that other four or five-hour process that it took to get him back to his cell. You can't have a fair trial without food, without sleep, without a third of your discovery, and that's the reason that this case, if you are going to remand, I would ask that you remand it for a hearing on all three of those issues. To me, that's what the trial judge should have done. You're raised that you're not getting food, let's have a hearing. You're raised that you're not getting sleep, let's have a hearing. You're raised that you didn't get this discovery, let's find out what it is, figure out if it's material, figure out if you got a fair trial here or not. So I'd ask you to remand on all three. Thank you very much. Thank you, counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Fisher, Hurwitz